**Ex parte Floyd W. HERRING, Jr., Relator.**

No. B–1215.

Supreme Court of Texas.

Feb. 5, 1969.

Marvin O. Teague, Houston, for relator.

Jack A. Scruggs, Houston, for respondent.

GREENHILL, Justice.

The Relator, Floyd W. Herring, Jr., was held to be in contempt of court and was put in jail for failure to make support payments as directed by the court. He was not personally served with notice of the show-cause hearing at which he was held to be in contempt, and he had no knowledge from any other source that such a hearing was to be held. Notice of the hearing was served on Herring's attorney, but she informed the person making the service that she did not know where Herring was, and that in her opinion, service on her (the attorney) was insufficient. No attempt was made to serve Herring personally, and there is no evidence that Herring was secreting himself for the purpose of evading process. The question is whether Herring was afforded due process of law. We hold that he was not.

The difficulty arose out of a divorce action filed against Herring by his wife. Mrs. Herring sought temporary support for herself and support for their children. Herring and his wife voluntarily appeared before a Court of Domestic Relations in Harris County on April 9, 1968, for a preliminary hearing. He was not represented by counsel, apparently because he did not desire any. Later, and before our immediate problem arose, he did employ counsel for the divorce proceeding. At this preliminary hearing, Herring was ordered to make support payments of $50 per week. There was then no contest over the payments or the amount thereof.

Approximately three months later, on July 23, 1968, Herring's wife, through her attorney, filed a complaint with the court to the effect that Herring had not made the support payments as ordered. She requested that a "show cause" order be issued against him. Such an order was issued pursuant to Rule 308–A, Texas Rules of Civil Procedure,[1] commanding Herring to

---

1. References throughout this opinion to rules and article numbers are to Texas Rules of Civil Procedure and Vernon's

Texas Revised Civil Statutes Annotated (1964). All emphasis here is added.

appear before the court on September 3, 1968, to show cause why he should not be held in contempt of court for his failure to obey the orders of the court to make the support payments.

It is the contention of the wife's counsel that the notice of the show-cause hearing to be held on September 3 was duly given to Herring pursuant to Rules 308–A and 21a. The wife's attorney sent Herring's attorney in the divorce suit[2] a letter by certified mail, attaching thereto a copy of the complaint which gave rise to the show cause order. The letter concluded:

"Service upon the respondent [relator here], Floyd W. Herring, Jr., is obtained by this notice to you, as his attorney of record, as provided in Rule 21a of the Texas Rules of Civil Procedure, and I trust you will notify Mr. Herring and have him present at said hearing."

Herring's attorney replied that Herring had not contacted her recently, but that she, Herring's attorney, would make an effort to notify him of the show-cause hearing. She further stated in her reply letter, however, that she did not regard service upon her, as Herring's attorney, to be sufficient. She stated that personal service was necessary "in any case where jail time can be given."

The affidavit of Herring's attorney, which is not controverted, states that prior to September 3, 1969, she could not locate Herring and that she told the wife's attorney that she would be unable to be present at the September 3 hearing because she would be out of town. She again told the wife's attorney that Mr. Herring should have personal service. The affidavit of the attorney also states that Herring did not know of the September 3 contempt hearing until he came to her office around the end of September.

At the September 3 show-cause hearing, the court heard evidence that Herring had failed to make support payments as ordered by the court's prior temporary order of April 9, 1968; and since this evidence stood uncontradicted, the court adjudged Herring to be in contempt. The judgment reads in part:

"ORDERED, ADJUDGED AND DECREED that the Respondent, Floyd W. Herring, Jr., as punishment for contempt, be confined in the County Jail of Harris County, Texas, for a period of three (3) days, and that he be further detained by the Sheriff of Harris County, Texas, until he shall have purged himself of such contempt by paying to the Harris County Probation Department the sum of Eight Hundred and Eighty-Four Dollars and Seventy Cents ($884.70) for the support and maintenance of his minor children and wife during the pendency of this suit and all costs of Court accrued herein and he is to pay attorney's fees of Seventy-Five and no/100 Dollars ($75.00)."

A writ of attachment was issued on September 11, 1968, and Herring was placed in jail on October 28, 1968. He remained there until released by this Court on bond on November 15, 1968. That is, he has served his three days, and was in jail pursuant to the "and until he complies" portion of the order.

It is Herring's position that the Court of Domestic Relations had no jurisdiction to order his confinement, and therefore its order is void, because the notice given to his attorney of the September 3 hearing was inadequate to afford due process.

As stated, notice of the September 3 hearing at which Herring was adjudged in contempt was given or attempted pursuant to Rules 308–A and 21a. Rule 308–A, as pertinent here, reads:

"In cases where the court has ordered periodical payments for the support of a child or children, as provided in the statutes relating to divorce, and it is

---

. 2. Relator is represented by different counsel in the instant habeas corpus proceeding.

claimed that such order has been disobeyed, the person claiming that such disobedience has occurred shall make same known to the judge of the court ordering such payments. * * * Upon the filing of such statement, or upon his own motion, the court may issue a show cause order *to the person* alleged to have disobeyed such support order, commanding him to appear and show cause why he should not be held in contempt of court. *Notice of such order shall be served on the respondent in such proceedings in the manner provided in Rule 21a,* not less than ten days prior to the hearing on such order to show cause. * * * Upon a finding of such disobedience, the court may enforce its judgment by orders as in other cases of civil contempt."

Rule 21a, in turn, provides in part as follows:

"Every notice required by these rules, * * * may be served by delivering a copy of the notice or of the document to be served, as the case may be, *to the party to be served,* or his duly authorized agent, *or his attorney of record,* either in person or by registered mail to his last known address, or it may be given in such manner as the court in its discretion may direct.

We shall assume for purposes of this opinion that Rule 308–A contemplates that service under any of the applicable portions of Rule 21a including service upon the attorney would constitute a compliance with the rules.[3] Under such rules, a party could be afforded due process even though he was not personally served with citation. For example if his attorney were served with the notice and the attorney duly informed his client of the hearing, or if the person were given ample actual notice by the court or an officer of the court of a show-cause hearing, there would be no "due process" problem.

■ We do hold, however, that it is a denial of due process to commit a person to prison for contempt who is not shown to be avoiding deliberately the service of process, and who has had *no* personal notice or knowledge of the show-cause hearing at which he was held in contempt. The adequacy of the personal notice or knowledge is not now before us because Mr. Herring, under our record, had absolutely none. And, as suggested above, we also reserve the problem which will be presented when it is shown that the person is deliberately evading the service of process.

■ In most instances, relief would be afforded more promptly and should be obtained by informing the trial judge of the lack of due notice or actual knowledge of the show-cause hearing. But it is the duty of this Court to order the release of persons illegally restrained upon an order of commitment for the violation of a court order. Article 1737, Vernon's Annotated Civil Statutes.

Even though the notice of the show-cause hearing was accomplished under our Rules 308–A and 21a, Mr. Herring, under the record before us, was not afforded due process of law. He is therefore ordered to be discharged.

---

3. While Rule 21a provides for service on "the party to be served * * * or his attorney," other rules provide for service on "the opposite party or his attorney." For example, Rules 200, 186, 189 dealing with depositions; Rule 457 (notice of judgment) ; and Rules 516 and 474 (appellate procedure). Some rules dealing with procedural matters, provide for service only upon the attorneys. See Rules 209, 237–a, 246, 486, 480, 456 and 471. Other rules provide only for service on "the opposite party" or "the adverse party." See Rules 239a (default judgment) and 681 (issuance of temporary injunction). Still others are more like Rule 308–A in that they provide for service as provided in Rules 21a and 21b, such as Rule 296 on the making of findings by the trial court.