**Ex parte Charles G. MOORE.**

**No. 8571.**

Court of Civil Appeals of Texas, Texarkana.

April 25, 1978.

Rehearing Denied June 6, 1978.

---

Clayton L. Hall, Lovett & Herrington, Clarksville, for relator.

Pat C. Beadle, Beadle & Beadle, Clarksville, for respondent.

ODEN, Justice.

This is an original habeas corpus proceeding instituted pursuant to Tex.Rev. Civ.Stat.Ann. art. 1824a (Supp.1978). The relator, Charles G. Moore, was restrained in his liberty within the judicial district of this Court for failure to make child support payments. Notice of the show cause hearing which gave life to the order of commitment under which Moore was incarcerated

was, pursuant to court order, served by posting same on the front door of relator's residence [1] and forwarding a duplicate original thereof to relator by registered mail, return receipt requested, at his residence.[2] Moore had no personal notice or knowledge of the show cause hearing at which he was held in contempt until one day after it had transpired. There is no evidence that relator was secreting himself for the purpose of avoiding service of process. The question is whether Moore was afforded due process of law. We hold that he was not.

On August 3, 1964, relator and Gail Moore were divorced. The divorce decree provided, inter alia, for relator to pay $75.00 per month child support. On August 4, 1974, Gail Moore filed a complaint with the court that granted the divorce by which she requested the issuance of an order directing Moore to show cause why he should not be held in contempt for failure to make child support payments for the preceding eighty-three (83) months. The show cause order was promptly issued; however, responsible parties were unable to personally serve the notice on Moore. On August 18, 1977, Gail Moore obtained an order authorizing service by registered mail and by posting the notice on the front door of relator's residence.[3] The sheriff's return reflects that the notice was posted on relator's residence on August 19, 1977, and the return receipt indicates that the notice was received in the mail on August 20, 1977. The show cause hearing was held on September 9, 1977. Relator did not appear. The order of commitment was issued on that date. On September 16, 1977, relator was arrested and retained in the Red River County Jail until November 23, 1977, when this Court admitted him to bail pursuant to Tex.Rev.Civ.Stat.Ann. art. 1824a (Supp. 1978). The uncontroverted affidavits of relator attached to relator's brief [4] clearly show that relator received no personal notice or knowledge of the show cause hearing until September 10, 1977,[5] when he talked with his wife on the telephone. There is no evidence or suggestion that relator deliberately avoided the service of process.

1. The residence was occupied by relator's mother-in-law; however, she declined to accept service stating she did not know relator's whereabouts.

2. The return receipt bore handwriting purporting to be relator's signature; however, uncontroverted affidavits show that relator's daughter by a subsequent marriage, who was then under 16 years of age, receipted for the notice by signing her father's name.

3. The order was issued pursuant to Tex.R. Civ.P. 106 (1977) which reads:
   "Unless it otherwise directs, the citation shall be served by the officer delivering to each defendant, in person, a true copy of the citation with the date of delivery endorsed thereon and with a copy of the petition attached thereto. Where it is impractical to secure personal service, as above directed, the court, upon motion, may authorize service by leaving a copy of the citation, with petition attached, at the usual place of business of the party to be served, or by delivering same to anyone over sixteen years of age at the party's usual place of abode, by registered or certified mail, or in any other manner which will be reasonably effective to give the defendant notice of the suit."
   We are not required to find whether or not the posting of the notice on the front door of relator's residence was reasonably effective to give him notice of the show cause hearing because of our holding that he was not afforded due process of law.

4. We have accepted same as correct because unchallenged in the brief filed on behalf of Gail Moore. Tex.R.Civ.P. 419. However, although the affidavits are uncontroverted, they are still hearsay and we think it is poor practice to allow a person who has been incarcerated for failure to pay child support to be released from jail on his ex parte affidavit and that of his family or relatives without the holding of an evidentiary hearing where the affiants can be cross-examined to determine the truth of their statements. Apparently this procedure was approved in *Ex Parte Herring*, 438 S.W.2d 801 (Tex.1969), and while we feel duty bound to follow it, such procedure seems to be an unprecedented method for determining the truth. Our notion of fairness compels us to state that we believe that justice would best be served in a habeas corpus proceeding by directing the trial court to hold an evidentiary hearing on whether or not the relator received notice of the contempt proceedings, with the findings being certified to this Court for our determination of whether relator has been illegally restrained of his freedom.

5. One day after it had transpired.

It is a denial of due process to commit a person to prison for contempt who has *no personal notice or knowledge* of the show cause hearing at which he was held in contempt. *Ex Parte Herring*, 438 S.W2d 801 (Tex.1969). This is true even though substituted service is accomplished through compliance with Tex.R.Civ.P. 106. The issue is not whether relator was served in compliance with the rules, but rather whether he was afforded due process. We are not faced with deciding if one who deliberately avoids process is charged with constructive notice of the contents of the process because there is no evidence or suggestion that relator deliberately avoided the service of process.

A recitation in the order adjudging relator in contempt to the effect that relator was duly cited and notified to appear is not controlling on the due process issue even though it is the general rule in this State in civil cases that a recitation of due service in a judgment cannot ordinarily be impeached by collateral attack. *Ex Parte Cardwell*, 416 S.W.2d 382 (Tex.1967). It is the duty of this Court to consider the entire record to determine whether due process has been accorded relator and it would be unconscionable for us to hold that a trial court could order the seizure and incarceration of a citizen with no notice and then deprive him of a right to relief in a habeas corpus proceeding by reciting in its judgment that the person had been duly served. *Ex Parte Cardwell*, supra.

It is the duty of this Court to order the release of persons illegally restrained upon an order of commitment for the violation of a court order. Tex.Rev.Civ.Stat. Ann. art. 1824a (Supp.1978). The pendency of a motion to purge in the district court does not relieve us of this duty and Gail Moore's suggestion that this Court lacks jurisdiction in the premises because of the pendency of such a motion is not well taken.

It is ordered that relator be discharged.