NUMBER 13-05-725-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







IN RE: ALBERT ACEVEDO, JR.






On Petition for Writ of Habeas Corpus






DISSENTING MEMORANDUM OPINION (1)


Before Chief Justice Valdez and Justices Rodriguez and Castillo


Dissenting Memorandum Opinion by Justice Castillo


 This case involves an application for writ of habeas corpus filed by an attorney
held in contempt of court for failing to appear at a noticed setting. The pivotal court
date is February 9, 2005. For the reasons explained below, I would deny relief. Thus,
I respectfully dissent.

I. BACKGROUND 

 Relator Albert Acevedo, Jr. testified at the evidentiary hearing convened for
purposes of contempt proceedings. Acevedo is an attorney who offices in San
Antonio and primarily practices criminal law in multiple jurisdictions with cases in
federal and State courts. His custom is to familiarize himself with policies and
procedures of the various courts in which he practices. His experience in Victoria
County involved representing clients in three or four criminal cases. Because he
generally has up to five court settings on any given day, he daily prioritizes multiple
settings. His attempt to prioritize a federal case in San Antonio over a misdemeanor
case in Victoria County Court at Law No. 2 (the "referring court") resulted in his
nonappearance for a pre-set hearing in the latter and, consequently, contempt
proceedings. At the evidentiary hearing convened for purposes of contempt
proceedings, the evidence unfolded as follows. 

A. The Testimony

 Acevedo represented V.L.L. in a misdemeanor theft case in Victoria County
Court at Law No. 2 and in pending felony cases in San Antonio. V.L.L. resided in San
Antonio and appeared at the pertinent court settings in Victoria. According to
Acevedo, V.L.L. had been a fugitive and recently released from a substance abuse
treatment facility. Acevedo assumed the delay in disposing of V.L.L.'s misdemeanor
case, although unintentional, was beneficial to V.L.L. because she could gather money
for restitution while the case remained pending. Acevedo believed that restitution to
the victim would help plea negotiations and the ultimate disposition of all V.L.L.'s
cases. 

 The referring court's observation of Acevedo's conduct began with his
nonappearance at a noticed January 19, 2005 setting. V.L.L. appeared. Acevedo was
unable to appear because of a scheduling conflict. Either he or his staff called court
staff to report the conflict. The referring court accommodated his schedule and reset
the case for February 9, 2005 at 9:00 a.m. Notice was sent to Acevedo on January
24, 2005. Importantly, the February 9 date was specifically suggested by either
Acevedo or his staff after the referring court requested a date convenient for him. In
either event, the referring court did not unilaterally set the date. More importantly,
February 9 was a Wednesday. On Wednesdays, the referring court did not ordinarily
set hearings in the afternoon. Acevedo testified he did not know this. 

 On February 9, 2005, Acevedo did not appear for the 9:00 a.m. setting. His
client V.L.L. appeared. Acevedo testified he completed a federal court matter he had
that morning and was en route to Victoria by approximately 10:00 a.m. Meanwhile
at approximately the same time, the court clerk's office received Acevedo's motion for
continuance by fax. The referring court denied the motion because a faxed filing was
not a proper filing in the court. The referring court knew V.L.L. appeared. Because
the referring court did not want V.L.L. to proceed in a criminal matter without an
attorney, she reset V.L.L.'s case to February 23, 2005. 

 The following day, the referring court began contempt proceedings against
Acevedo for his failure to appear at the February 9, 2005 hearing. The referring court
considered Acevedo's nonappearance serious because: (1) Acevedo did not appear
at a noticed hearing in a criminal case to dispose of the matter and his client did
appear after traveling from San Antonio; (2) neither the client nor the referring court
could dispose of the case without Acevedo present; (3) the referring court could not
"take care of the business of the court;" (4) although Acevedo did appear for an April
1, 2005 setting that disposed of V.L.L.'s case by a guilty plea, the five-month period
to dispose of the case exceeded the usual ninety-day interval in such cases; and (5)
Acevedo failed to contact the court after his failure to appear at the hearing. 

 The referring court acknowledged that attorneys who practice criminal law have
multiple settings daily. The referring court does grant oral motions for continuance if
announced before the date of the hearing. The referring court pointed out that
Acevedo was granted a continuance of the original setting by telephone. The referring
court further stated:

 Q. Okay. And, Judge, do you have a personal rule of thumb as far as
the number of times a case will be carried forward or is it just
case-by-case?


 A. It depends on the reasons for the continuance. I mean, I don't have
any hard and fast rules. It just really depends on the situation.


 Q. And did the primary issue that you took with Mr. Acevedo was that
he didn't file the motions earlier in the form that you felt was acceptable,
is that correct?


 A. Well, they're not timely, nor were they proper, yes.

. . . 


 Q. And does that impede you, again, in carrying out justice for the
clients and the attorney and for the whole system?


 A. Absolutely.


 Q. Do you consider that a serious and egregious behavior?


 A. I do.


 The referring court also addressed Acevedo's attempt to file a motion for
continuance by fax on February 9, 2005. The referring court had personally and
informally made known to Acevedo in another matter that fax filings were not
acceptable without Supreme Court authority to file by fax. (2) The referring court stated
it reset the case for the sake of V.L.L. but it did not excuse Acevedo's failure to
appear. 

 Acevedo testified he knew of the February 9, 2005 setting. He admitted he did
not appear but stated his absence was not intentional. His intent was not to disregard
the setting. Acevedo explained that, on the morning of February 9, 2005, he realized
that he would not be able to appear in Victoria because of a pretrial matter in federal
court in San Antonio. (3) He decided that, since a trip to Victoria would take most of the
day, he could complete the federal matter first and then proceed to Victoria. He
intended to appear to dispose of V.L.L.'s case that day, even if he arrived late. 

 At some point before the noticed hearing, Acevedo contacted V.L.L. and told
her to advise the referring court he was in San Antonio handling a federal matter. (4) 
Acevedo filed the motion for continuance out of precaution, he said, but was unsure
whether the referring court would grant it. When he completed the federal case, he
proceeded to Victoria. His staff advised him that V.L.L.'s case was reset, and he
assumed that the motion for continuance was granted. Because the case was reset,
Acevedo returned to San Antonio. He believed that the referring court's resetting the
matter excused him and for that reason did not communicate with the referring court
with respect to his nonappearance. 

 Acevedo testified he did not believe the matter was a problem until he received
a show cause order at his office. He testified he "became aware that the show cause
citation had been issued." He further testified that he did not then communicate with
the referring court about his nonappearance because he learned about the contempt
proceedings. At the evidentiary hearing, he expressed remorse that he did not appear
and did not contact the referring court. 

B. The Order of Contempt

 At the close of evidence, the trial court pronounced its findings as follows: (1)
Acevedo had ample notice of the contempt proceeding; (2) he failed to appear in court
on February 9, 2005; and (3) Acevedo was in contempt of court for his failure to
appear in court. After assessing punishment, the trial court remanded Acevedo to the
county sheriff. Acevedo was taken into the sheriff's custody by whom he was being
held when the petition for writ of habeas corpus was presented to this Court. We
granted Acevedo's motion for release on bond, and he was released on bond pending
our decision.

II. HABEAS CORPUS 

 Broadly defined, contempt of court is disobedience of a court by an action in
opposition to its authority. In re Johnson, 996 S.W.2d 430, 433 (Tex.
App.-Beaumont 1999, no pet.) (citing Ex parte Chambers, 898 S.W.2d 257, 259
(Tex. 1995)). An original habeas corpus proceeding is a collateral attack on a
contempt judgment. Ex parte Rohleder, 424 S.W.2d 891, 892 (Tex. 1967); In re
Houston, 92 S.W.3d 870, 875 (Tex. App.-Houston [14th Dist.] 2002, orig.
proceeding). A writ of habeas corpus is available in this State to review a contempt
order entered by a lower court confining a contemnor. Ex parte Gordon, 584 S.W.2d
686, 687-88 (Tex. 1979). Its purpose is not to determine the ultimate guilt or
innocence of the relator, but only to ascertain whether the relator has been unlawfully
imprisoned. Id.; Ex parte Haskin, 801 S.W.2d 12, 13 (Tex. App.-Corpus Christi
1990, orig. proceeding). We may order a party released when a judgment or order is
void for lack of jurisdiction or because the party was deprived of liberty without due
process of law. Haskin, 801 S.W.2d at 13. Where the judgment ordering
confinement is "void," the confinement is illegal and the relator is entitled to discharge. 
Gordon, 584 S.W.2d at 687-88 (citing Ex parte Rhodes, 163 Tex. 31, 34, 352
S.W.2d 249, 250 (1961)). A writ of habeas corpus will issue if the contempt order
is void because it deprives the relator of liberty without due process of law, see Ex
parte Swate, 922 S.W.2d 122, 124 (Tex. 1996), or because the order of contempt
was beyond the power of the court to issue. See Ex parte Barnett, 600 S.W.2d 252,
254 (Tex. 1980); In re Houston, 92 S.W.3d at 875-76. A. Collateral Estoppel

 By his first point, Acevedo maintains that the trial court erred in refusing his
motion to dismiss based on collateral estoppel and, specifically, double jeopardy. He
maintains that he filed a pretrial petition for writ of habeas corpus which the trial court
denied. Acevedo asserts that double jeopardy estopped subsequent prosecution of the
contempt claim because of the prior finding of contempt on the same grounds. The
State responds that neither collateral estoppel nor jeopardy apply because Acevedo's
prior appeal successfully voided the prior order of contempt and double jeopardy is
thus not implicated. 

 At the beginning of the contempt hearing, Acevedo's counsel announced ready
on the application for writ of habeas corpus. He argued that the purpose of the
application was to establish a special plea in bar on the basis of collateral estoppel. (5) 
The trial court denied the application in open court. Acevedo asserts that the trial
court also erred by denying him the opportunity to appeal the adverse ruling before the
trial court proceeded to hear evidence. 

 As a prerequisite to presenting a complaint for appellate review, the record must
show the complaint was made to the trial court by a timely request, objection, or
motion that stated the grounds for the ruling that the complaining party sought from
the trial court with sufficient specificity to make the trial court aware of the complaint,
unless the specific grounds were apparent from the context. Tex. R. App. P.
33.1(a)(1)(A); Dixon v. State, 928 S.W.2d 564, 564-65 (Tex. Crim. App. 1996). 
Whether the specific grounds for an objection were apparent from the context of the
objection is determined by looking at each situation individually as it arises. Heidelberg
v. State, 144 S.W.3d 535, 538 (Tex. Crim. App. 2004). An objection stating one
legal basis may not be used to support a different legal theory on appeal. Rezac v.
State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); Thomas v. State, 723 S.W.2d
696, 700 (Tex. Crim. App. 1986). Even constitutional error may be waived by the
failure to specifically object. Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App.
1995). 

 Acevedo's application to the trial court for writ of habeas corpus relief is in the
clerk's record. In his application, he asserted that the prior restraints on his liberty 
occasioned by the contempt order this Court determined was void barred the contempt
proceeding on double jeopardy. The court reporter's record shows that Acevedo did
not argue double jeopardy as a basis for his plea in bar, but the trial court stated it had
reviewed the file. Because the record demonstrates that Acevedo objected to the
contempt proceedings at trial on the theory he raises on appeal, he preserved error. 
See Tex. R. App. P. 33.1(a)(1)(A); Rezac, 782 S.W.2d at 870. 

 However, even though Acevedo has raised his jeopardy claim in the context of
a criminal contempt proceeding, he has not demonstrated error. Acevedo maintains
that the double jeopardy bar applies to successive prosecutions and successive
punishments for the same criminal offense if the two offenses are the same offense. 
The State responds that double jeopardy does not apply because successful appeal of
a judgment on any ground other than sufficiency of the evidence poses no bar to
further prosecution of the same charge. The State further responds that, because this
Court's prior opinion voided the prior order, collateral estoppel does not apply because
there is no final judgment.

 As embodied in the Fifth Amendment's guaranty against double jeopardy,
collateral estoppel means simply that, when an issue of ultimate fact has once been
determined by a valid and final judgment, that issue cannot again be litigated between
the same parties in any future lawsuit. Ex parte Robinson, 641 S.W.2d 552, 556
(Tex. Crim. App. 1982) (citing Ashe v. Swenson, 397 U.S. 436, 443(1970)); see Ex 

parte Thomas, 953 S.W.2d 286, 289 (Tex. Crim. App. 1997). There must have been 

in the first trial a valid and final judgment which determined an issue of ultimate fact. 
See Robinson, 641 S.W.2d at 556. A judgment is not final until the conviction is
affirmed and the mandate of affirmance becomes final. See Jones v. State, 711
S.W.2d 634 (Tex. Crim. App. 1986).

 In this case, the issue of ultimate fact is whether Acevedo was in contempt of
court. The first contempt proceeding resulted in a final order of contempt. However,
this Court decreed the order invalid for lack of personal service and notice of the
proceedings. Because this Court previously disposed of Acevedo's claim for reasons
unrelated to the merits and did not reach the merits of the contempt action, there was
no final disposition of his initial writ application and, thus, the trial court was not
barred from addressing the merits of the contempt proceeding. See Thomas, 953
S.W.2d at 289. Thus, Acevedo has not demonstrated a final judgment on the merits
of the contempt proceedings against him. Accordingly, I conclude Acevedo has not
been put in jeopardy and the trial court properly denied his plea in bar on collateral
estoppel grounds. See Robinson, 641 S.W.2d at 556. Thus, I would overrule his first
point.

B. Denial of the Right to Appeal

 By his second point, Acevedo asserts that the trial court improperly denied him
his right to appeal the adverse ruling with respect to his plea in bar. He maintains that,
because he announced he was not ready to proceed on the merits of the contempt
claim, the trial court should have stayed the evidentiary hearing. The State responds
that Acevedo did not request a stay of the proceedings, but the trial court did grant
a running objection based on his collateral estoppel claim. 

 Because Acevedo did not request a stay, abatement, or a continuance of the
proceedings, he has forfeited error. See Tex. R. App. P. 33.1(a)(1)(A). All a party has
to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know
what he wants, why he thinks himself entitled to it, and to do so clearly enough for
the judge to understand him at a time when the trial court is in a proper position to do
something about it. Keeter v. State, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005)
(citing Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). In this
case, Acevedo's announcement of not ready does not equate to an affirmative request
for a ruling from the trial court with respect to a stay or a continuance. 

 Even assuming he preserved error, Acevedo has not shown harm resulted from
the absence of an interlocutory appeal, see Tex. R. App. P. 44.2. The trial court
granted Acevedo a running objection with respect to his collateral estoppel and double
jeopardy claims and thus his complaint was preserved for appellate review on those
grounds. Acevedo presented his complaint in this original proceeding. I, however,
would rule adversely to his collateral estoppel and double jeopardy claims. Because
Acevedo sought and secured appellate review of the matters he ostensibly would have
earlier pursued on interlocutory appeal, I cannot conclude he has demonstrated harm. 
See Tex. R. App. P. 44.2. Accordingly, I would overrule his second point.

C. Lack of Personal Service

 By his third point, Acevedo asserts he was denied due process because he was
not personally served with the show cause citation. The State responds that Acevedo
has not preserved error because he failed to timely raise his complaint. 

 We are empowered to order a party released when an order is void because the
party was deprived of liberty without due process of law. See Haskin, 801 S.W.2d
at 13. In a case involving conduct outside the presence of the court, due process
requires that the alleged contemnor receive full and unambiguous notification of the
accusation of any contempt. Ex parte Vetterick, 744 S.W.2d 598, 599 (Tex. 1988). 
This notice should be by show cause order or equivalent legal process served on the
alleged contemnor, and it should state when, how, and by what means the defendant
has been in contempt. See Houston, 92 S.W.3d at 877 (citing Ex parte Edgerly, 441
S.W.2d 514, 516 (Tex. 1969)); Gordon, 584 S.W.2d at 688. The show cause notice
must advise the alleged contemnor of the specific acts of contempt and provide notice
that criminal confinement and a criminal penalty will be sought as punishment. See
Houston, 92 S.W.3d at 877. Due process requires that the alleged contemnor be
personally served with a show cause order or that it be established that he had
knowledge of the content of such order. Ex parte Herring, 438 S.W.2d 801, 803
(Tex. 1969). 

 I am mindful that notice of the alleged contemptuous acts is required. See
Houston, 92 S.W.3d at 877. However, Acevedo does not state he lacked notice of
the alleged contemptuous acts. Acevedo also does not deny constructive notice of
the alleged contemptuous acts. Rather, he maintains that lack of substantive notice
from the inception of contempt proceedings bars subsequent corrective actions that
attempt to remedy due process violations. Acevedo further asserts that a correction
of the allegations of contemptuous conduct, once erroneous, cannot cure the due
process violation. I turn to the record. 

 Before hearing evidence, the trial court pronounced in part "there has been a
show cause served on Mr. Acevedo regarding an alleged failure to appear as defense
counsel in this case on February 9, 2005." Acevedo's counsel urged a motion to
quash service which the trial court denied in open court. (6) The following colloquy
between the trial court and Acevedo ensued:

 The Court: Let me put a couple of things on the record before we begin
with the testimony. And, you counsel just made an announcement, Mr.
Acevedo, but are you Albert Acevedo, Jr.?

 

 Mr. Acevedo: I am, Your Honor.

 

 The Court: And you understand there is a proceeding that has been
brought asking that you be held in contempt of court? Do you
understand that?

 

 Mr. Acevedo: Yes, Your Honor.


During the evidentiary hearing, Acevedo admitted he received a show cause order at
his office and "became aware" that the show cause citation had been issued. When
questioned by the trial court in the colloquy above, Acevedo acknowledged he knew
of the contempt proceeding. Before entering the contempt order, the trial court found
that Acevedo "has had ample notice of this contempt proceeding." 

 To demonstrate lack of personal service, Acevedo relies on the testimony of the
deputy who delivered the show cause citation to his office. The deputy testified that
he did not personally serve the show cause citation on Acevedo but left the document
with Acevedo's staff, consistent with a practice in place at Acevedo's request. The
deputy testified he regularly left citations on bond forfeitures requesting personal
service on Acevedo with his staff. Acevedo testified he was the surety on V.L.L.'s
bond. 

 I observe that in the prior proceeding before this Court, Acevedo raised a
challenge to the lack of personal service of the show cause citation and the lack of
notice of the conduct in question. In the prior proceeding, this Court included the
complained-of language in the opinion issued. (7) Finding the contempt order void, this
Court held that the officer's return did not indicate that Acevedo was personally served
with the original show cause citation and the show cause notice did not specify, as
it must, the contemptuous acts. Acevedo relied on the opinion to support his plea in
bar urged in the matter before us. Prior to hearing evidence in this case, the trial court
reviewed the file and considered the procedural history before it determined that "there
has been a show cause served on Mr. Acevedo." (8)

 The show cause citation is before us. I assume without deciding that Acevedo's
motion to quash the citation raised the matters urged before us and thus he preserved
error. See Tex. R. App. P. 33.1(a)(2)(A). Due process requires that the alleged
contemnor have actual or constructive knowledge of the content of the show cause
order. See Herring, 438 S.W.2d at 803; Houston, 92 S.W.3d at 877. Even
assuming that Acevedo did not receive personal service of citation, the record
demonstrates he had constructive notice of the alleged contemptuous acts. See
Herring, 438 S.W.2d at 803; Houston, 92 S.W.3d at 877. Acevedo admitted he
received a show cause order at his office, he "became aware" that the show cause
citation had been issued, and he did not communicate with the referring court about
his nonappearance because he learned about the contempt proceedings. 

 I conclude that the trial court's finding that Acevedo had ample notice is
supported by the record before it. I further conclude that Acevedo had constructive
notice of the show cause complaint underlying the contempt proceeding. See Herring,
438 S.W.2d at 803; Houston, 92 S.W.3d at 877. Acevedo has provided no authority
to support his argument that a corrected show cause citation specifying the
contemptuous conduct cannot cure a proven due process violation. Accordingly,
Acevedo received the process that was due in this case. See Herring, 438 S.W.2d at
803; Houston, 92 S.W.3d at 877. Thus, I would overrule his third point.

III. CONCLUSION

 Having considered and overruled Acevedo's three points, I would deny his
application for writ of habeas corpus. 

 ERRLINDA CASTILLO

 Justice


Do not publish.

Tex. R. App. P. 47.2(b).


Dissenting Memorandum Opinion delivered and filed

this 9th day of November, 2006.
1. See Tex. R. App. P. 47.1, 47.4; see also this Court's opinions in the related cases, Acevedo
v. State, No. 13-05-222-CR, 2005 Tex. App. LEXIS 3668 (Tex. App.-Corpus Christi May 12, 2005,
no pet.) (memorandum opinion per curiam) and In re Acevedo, No. 13-05-335-CR, 2005 Tex. App.
LEXIS 5754 (Tex. App.-Corpus Christi, July 22, 2005) (original proceeding).
2. The referring court explained that the county clerk had not submitted a plan to the Supreme
Court with respect to fax filings, and so, fax filings were not authorized. 
3. Acevedo testified travel time between San Antonio and Victoria was over two hours.
4. Acevedo denied his custom was to request clients to explain his nonappearance. He testified
that he preferred not to file continuance motions but, rather, handle set cases. 
5. The document is an application for writ of habeas corpus to the trial court. In it, Acevedo
asserts his special plea that the trial court's jurisdiction expired on grounds of double jeopardy and want
of personal service of citation. 
6. Acevedo's counsel apprised the trial court that Acevedo's motion to quash service was
included in the application for writ of habeas corpus. In the pleading, Acevedo asserted that "he has
not as of this date been personally served with citation or notice."
7. This Court's opinion reflects that on February 10, the trial court issued a "show cause citation"
addressed to Acevedo which stated: 


 You are hereby commanded to appear before the honorable County Court at Law No.
2 of Victoria County, Texas at the Courthouse of said County in Victoria, Victoria
County, Texas on the 23rd day of February, 2005 at 9:00 o'clock a.m. to answer to the
demand made by [the county court judge]. Nature of the above mentioned demand is
substantially to have a hearing to show cause why you should not be held in contempt
of court.


In re Acevedo, 2005 Tex. App. LEXIS 5754, at *1-2. 
8. In this case, the show cause citation issued on July 27, 2005 and directed to Acevedo states:


 YOU ARE HEREBY COMMANDED to personally appear in County Court at Law
No. 2, before [the county court judge] on September 1, 2005 at 9:00 o'clock a.m. in
the County Court at Law No. 1 courtroom [address] to show cause why he should not
be held in contempt for failing to appear as defense counsel for [V.L.L.] on February 5,
2005 at nine o'clock a.m. in County Court at Law No. 1, Victoria County, [judge
presiding]. 


 [The county court judge] will consider criminal confinement and/or a fine as
penalties if the Respondent is found in contempt. 


 CONTEMPT OF COURT IS PUNISHABLE BY A MAXIMUM PENALTY OF A FINE
OF UP TO $500.00 AND A SENTENCE OF CONFINEMENT UP TO 180 DAYS IN JAIL
OR BOTH.


(Emphasis original).