# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00297-CV

**Anthony Whitney Norman, Appellant**

**v.**

**Deanna Williamson, Clerk of Texas Court of Criminal Appeals, in her Official Capacity as Clerk of The Texas Court of Criminal Appeals and in her Individual Capacity; and Chief Justice Sharon Keller of The Texas Court of Criminal Appeals, Appellees**

---

**FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-18-004768, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Anthony Whitney Norman, an inmate in the Texas Department of Criminal Justice's Institutional Division, appeals the trial court's dismissal of his lawsuit against Deanna Williamson, Clerk of the Texas Court of Criminal Appeals, and Sharon Keller, Presiding Judge of the Texas Court of Criminal Appeals[1] (collectively, the "Court Defendants"). Because we conclude that the trial court did not err in granting the Court Defendants' plea to the jurisdiction, we affirm the trial court's judgment.

## BACKGROUND

Norman is currently serving a twenty-two-year sentence for the murder of his wife at their Houston home in 2008. Norman was convicted following a jury trial in 2011, his

---

[1] Although in his suit, Norman identifies Keller as "Chief Justice," her correct title is "Presiding Judge" of the Court of Criminal Appeals. *See* Tex. Const. art. V, § 4.

conviction was affirmed on direct appeal by the Fourteenth Court of Appeals, and his petition for discretionary review was refused by the Texas Court of Criminal Appeals. *See Norman v. State*, No. 14-11-00433-CR, 2012 Tex. App. LEXIS 7968, at *56 (Tex. App.—Houston [14th Dist.] Sept. 20, 2012, pet. ref'd) (mem. op., not designated for publication). Norman then filed a series of applications for habeas relief, including in the 262nd District Court of Harris County in 2015, the court which convicted him. *See* Tex. Code Crim. Proc. art. 11.07. Regarding his 2015 habeas application, the trial court determined that no further evidentiary development was needed and recommended that the application be denied, and the Texas Court of Criminal Appeals denied the application without issuing a written order. *See Ex parte Norman*, No. WR-76,389-08 (Tex. Crim. App. Aug. 19, 2015). In addition, two subsequent habeas applications filed by Norman were each "dismissed [as a] subsequent application" by the Court of Criminal Appeals. *See Ex parte Norman*, WR-76,389-12 (Tex. Crim. App. Jan. 31, 2018); *Ex parte Norman*, WR-76,389-10 (Tex. Crim. App. Nov. 16, 2016).

In 2018, Norman filed a pro se lawsuit against the Court Defendants for what he contends are wrongful acts in connection with their handling of his 2015 application and two subsequent applications for habeas relief. In response, the Court Defendants filed a combined plea to the jurisdiction and motion to dismiss. In their plea and motion, the Court Defendants asserted that Norman's claims should be dismissed due to lack of subject-matter jurisdiction based on immunity, *see Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004) (explaining that issue of sovereign immunity may be raised by plea to the jurisdiction), and that his claims are frivolous and, therefore, subject to dismissal under Chapter 14 of the Texas Civil Practice and Remedies Code, *see* Tex. Civ. Prac. & Rem. Code

2

§§ 14.001-.014 (inmate litigation). After the trial court granted the Court Defendants' plea and motion and dismissed his suit, Norman timely filed this appeal.

Representing himself pro se, Norman raises three issues on appeal. In two issues, Norman challenges the trial court's rulings on the Court Defendants' plea to the jurisdiction and motion to dismiss. In his third appellate issue, Norman argues that the trial court erred in failing to issue findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296. We turn first to the issue of whether the trial court erred in granting the Court Defendants' plea to true jurisdiction.

## STANDARD OF REVIEW

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 878 (Tex. App.— Austin 2010, pet. denied) (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction without regard to whether the asserted claims have merits. *Miranda*, 133 S.W.3d at 226; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). When a plea to the jurisdiction is filed, the burden is on the plaintiff to affirmatively demonstrate a trial court's subject-matter jurisdiction over the dispute. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). To determine if the plaintiff has met that burden, the court considers "the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). When, as in this case, the plea to the jurisdiction challenges the sufficiency of the pleadings rather than the existence of any jurisdictional facts, the court makes the jurisdictional determination as a matter of law based solely on the facts alleged by the plaintiff, which are taken as true and construed

3

liberally in favor of jurisdiction. *Miranda,* 133 S.W.3d at 227. If the pleadings affirmatively negate the existence of jurisdiction, the plea should be granted. *Id.* at 226-27.

Because subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo. *Id.* at 226. When the jurisdictional analysis turns on questions of statutory construction, we also review these questions de novo. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011).

## ANALYSIS

*Immunity*

It is well established that judges are entitled to absolute immunity from liability for judicial acts, no matter how erroneous the act. *Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)); *Alpert v. Gerstner*, 232 S.W.3d 117, 127 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Under the doctrine of judicial immunity, immunity is overcome only when it is shown that the actions taken are nonjudicial or taken in the "clear absence of all jurisdiction." *Stump*, 435 U.S. at 356-57. Consequently, Keller is entitled to absolute immunity for acts performed in her official capacity as part of the judicial process. *See Halsey*, 87 S.W.3d at 554. Similarly, Williamson is entitled to derived judicial immunity for actions taken in her capacity as Clerk of the Court of Criminal Appeals. *See id.* (explaining that "an officer of the court receives the same immunity as a judge acting in his or her official judicial capacity" and that "immunity attaching to the judge follows the delegation, appointment, or court employment").

In addition, Norman's suit implicates sovereign immunity. Sovereign immunity "shield[s] the public from the costs and consequences of improvident actions of their governments," and as a result, generally protects officials for erroneous decisions and mistakes.

4

*Tooke v. City of Mexia*, 197 S.W.3d 325, 331-32 (Tex. 2006). Absent a legislative waiver, sovereign immunity generally bars suits against the State or its agencies or subdivisions. *University of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex. 2010). That immunity extends to state officials when sued in their official capacity because such a suit is, for all practical purposes, a suit against the state. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009).

*Ultra Vires*

Although not entirely clear, Norman seems to assert on appeal that the trial court erred in granting the Court Defendants' plea to the jurisdiction because he has sufficiently demonstrated that his claims fall within the ultra vires exception to immunity. Under this doctrine, a suit to compel a government actor, in his or her official capacity, "to comply with statutory or constitutional provisions" is not prohibited by sovereign immunity. *Id.* at 368-69. Properly pleaded ultra vires suits do not implicate sovereign immunity because they do not attempt to exert control over the state but, instead, attempt to reassert the control of the state over its official. *Id.* at 372.

To fall within the ultra vires exception, the plaintiff must not complain of a government official's exercise of discretion, but rather must allege and ultimately prove that the official acted without legal authority or failed to perform a purely ministerial act. *Id.* "[M]inisterial acts" are those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). A government official acts without legal authority when "he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016).

5

To determine if a plaintiff has pleaded a viable ultra vires action, the court must construe the relevant provisions that define the scope of the governmental body's legal authority, apply those statutes to the facts as pleaded by the plaintiff, and ascertain whether those facts constitute acts beyond the governmental body's legal authority. *City of New Braunfels v. Tovar*, 463 S.W.3d 913, 919 (Tex. App.—Austin 2015, no pet.).

To the extent we can discern any specific factual allegations from his live pleadings, Norman's complaint appears to center on the decision by the Texas Court of Criminal Appeals to deny his 2015 writ application as well as to deny his two subsequent writ applications. Specifically, Norman complains that his 2015 writ application was "denied without written order on the findings of the trial court" and that his subsequent writ applications, which "raised the same 101 Grounds for Relief," were also "dismissed without written order [as] subsequent applications for writ of habeas corpus." According to his allegations, the Court Defendants, who notified Norman by postcard that the Court of Criminal Appeals had denied his applications, have "systematically denied [him of] the ability to have his conviction legitimately and legally reviewed by [the Texas Court of Criminal Appeals]." In addition, Norman alleges that Williamson improperly "removed" the causes from the court's docket and that, consequently, she prevented judges at the Court of Criminal Appeals from reviewing the merits of his applications. Norman seeks monetary damages and injunctive relief requiring the Court of Criminal Appeals to issue a written order on the merits of his applications.

Article 11.07 of the Texas Code of Criminal Procedure is the statute governing habeas corpus proceedings and is the exclusive means of collaterally attacking confinement in non-death-penalty final felony convictions. *See* Tex. Code Crim. Proc. art. 11.07. Under Article 11.07, applications for writ of habeas corpus are filed in the convicting trial court

6

and made returnable to the Texas Court of Criminal Appeals. *Id.* § 3(a). Although the statute requires that the application be filed in the trial court, that court does not decide the merits of the application. Instead, the trial court determines whether there are unresolved facts material to the legality of the applicant's confinement; if necessary, holds a hearing on the application; makes any necessary findings of fact; and forwards the record to the Court of Criminal Appeals for a final ruling on the application for relief. *Ex parte Williams*, 239 S.W.3d 859, 861 (Tex. App.—Austin 2007, no pet.) (citing Tex. Code Crim. Proc. art. 11.07, §§ 3(c), (d), 5).

Section 5 provides that when the Texas Court of Criminal Appeals receives an application for habeas relief under Article 11.07, the court "may deny relief upon the findings and conclusions of the hearing judge without docketing the cause," or, alternatively, it "may direct that the cause be docketed and heard as though originally presented to said court or as an appeal." Tex. Code Crim. Proc. art. 11.07, § 5. When a cause is "docketed" under Article 11.07, the Court of Criminal Appeals treats the collateral proceeding as if it were an appeal, "argued or submitted to the court without oral argument." *See* Tex. R. App. P. 77.1; *Ex parte Coronado*, 508 S.W.3d 261, 264 (Tex. Crim. App. 2016) (J. Keasler, concurring) (explaining that under Section 5, "the Court may docket the cause and hear the writ application like an appeal"). In other words, when an application is "docketed," the court "will hand down a written opinion setting forth the reasons for its decision and any germane precedent." *See* Tex. R. App. P. 77.1. Conversely, when the court "den[ies] relief . . . without docketing the case," it bases its decision on the trial court's findings and without issuing a written opinion. *See Ex parte Thomas*, 953 S.W.2d 286, 288 (Tex. Crim. App. 1997) (denial of application for habeas relief without written order constitutes decision on merits by Court of Criminal Appeals); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (denial of application for habeas relief is "a

7

disposition relating to the merits of all claims raised" and therefore "final disposition" under Article 11.07, Section 4).

To the extent Norman assumes that the Court of Criminal Appeals has refused to "actually render[] a decision" on the merits of his 2015 application because it did not issue a written decision, that assumption is incorrect. The Court of Criminal Appeals has clarified that a "den[ial] . . . without docketing the case" under Article 11.07 (and therefore, without issuing a written opinion) nevertheless signifies that the Court of Criminals Appeals has addressed and rejected the merits of a particular claim. *Ex parte Thomas*, 953 S.W.2d at 288. In addition, under Section 4, if a subsequent application for writ of habeas corpus is filed that challenges the same conviction, the court may not, as a general rule, consider the merits of that subsequent application. Tex. Code Crim. Proc. art. 11.07, § 4; *Ex parte Torres*, 943 S.W.2d at 472; *see Ex parte Sledge*, 391 S.W.3d 104, 106 (Tex. Crim. App. 2013) (explaining that "the abuse of the writ doctrine, as codified in Section 4 of Article 11.07" barred court from reaching merits of subsequent post-conviction writ application). As a result, Norman's assertion that the trial court was acting without statutory authority when it "dismissed" his subsequent habeas applications is also incorrect.

Liberally construing Norman's allegations in his favor and accepting all of his allegations as true, we conclude that the acts that are the basis of Norman's claims are discretionary acts under Article 11.07, namely, the discretion to treat his application for habeas relief as "docketed" or, alternatively, to deny relief "without docketing" his cause. *See* Tex. Code Crim. Proc. art. 11.07, § 5. Consequently, Norman's allegations, even if proven, fail to establish that the Court Defendants acted without legal authority or failed to perform a purely ministerial act. Because Norman's pleadings affirmatively demonstrate that the trial court

8

lacked subject-matter jurisdiction over the dispute, the trial court did not err in granting the Court Defendants' plea to the jurisdiction. We overrule Norman's first issue on appeal. Because we may affirm the trial court's dismissal order based on our holding that the trial court lacked subject-matter jurisdiction over Norman's suit, we do not decide Norman's second issue on appeal, that is, whether the trial court erred in granting the Court Defendants' motion to dismiss pursuant to Chapter 14 of the Texas Civil Practice and Remedies Code. *See* Tex. R. App. P. 47.1.

In his third issue, Norman argues that the trial court erred in failing to issue findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296. Assuming without deciding that this issue has been adequately preserved for our review, we cannot conclude that the trial court committed error on this ground. Because the trial court's ruling on the Court Defendants' plea to the jurisdiction was based solely on the allegations presented in Norman's pleadings, findings of fact and conclusions of law would not have served any purpose and, in fact, would have been inappropriate in this case. *See Smith v. District Att'y Off. for Wood Cnty*, No. 03-13-00220-CV, 2014 Tex. App. LEXIS 11735, at \*9 (Tex. App.—Austin Oct. 24, 2014, pet. denied) (mem. op.) (citing *IKB Indus. (Nigeria) v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997) (summarizing when request for findings of fact and conclusions of law is inappropriate, including "dismissal based on pleadings")). We overrule Norman's third issue.

## CONCLUSION

Having overruled Norman's issues on appeal, we affirm the trial court's judgment.

 

 

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Baker, and Kelly

Filed:   February 11, 2021

Affirmed